**Louis Francis MONTESI,
Plaintiff-Appellant,**

v.

**Shirley Sanders Riddle MONTESI,
Defendant-Appellee.**

Court of Appeals of Tennessee,
Western Section.

Nov. 19, 1973.

Certiorari Denied March 18, 1974.

Charles G. Black, Memphis, for appellant.

Sam F. Cole, Jr., Memphis, for appellee.

CARNEY, Presiding Judge.

The plaintiff below, Louis Francis Montesi, has appealed from a decree of the Circuit Court of Shelby County dismissing his original bill for divorce. The Trial Judge also refused to grant separate support and maintenance to the defendant, Mrs. Montesi, on her cross bill. The plaintiff, Louis Montesi, is 54 years of age and has been married three times. The defendant is 29 years of age and has been married twice. The parties were married May 12, 1972, in Coral Gables, Florida, and separated on or about July 7, 1972, a period of only 56 days. There were no children born to this marriage.

The plaintiff, Louis Montesi, has children born to his first marriage but no children born to his second marriage. The defendant has a son born to her first marriage.

Mr. Montesi's first wife, the mother of his children, was murdered about three years before the trial in the present case. Mr. Montesi was indicted, tried, and convicted of second degree murder. He obtained a reversal from the appellate court and was ultimately exonerated from all guilt in the death of his first wife. He married a second time. This marriage did not last very long and ended in divorce.

The plaintiff, Louis Montesi, is a member of a prominent grocery family in the City of Memphis. His mother is still living and exercises some control over the family fortune. At any rate, it appears without dispute that the plaintiff, Louis Montesi, is accustomed to spending considerable amounts of money on himself and on his family. He has had a very severe drinking problem for a number of years. It seems that he periodically has had to leave Memphis and go to a sanitarium in northern Mississippi to "dry out." The defendant was well aware of the drinking problem at the time she married the plaintiff. Plaintiff promised defendant to quit drinking.

After a brief marriage of 56 days, defendant, Mrs. Montesi, left Mr. Montesi taking with her a brand new Cadillac worth $8,000 and two new fur coats. Mr. Montesi hired a private detective to locate Mrs. Montesi and brought suit for divorce also contending that she had taken the 1972 Cadillac without his permission and contending that it did not belong to her. Mrs. Montesi gave as her reason for leaving Mr. Montesi that he drank to an excess and oftentimes soiled himself and the bedclothes in his drunken stupor; that on at least one occasion he threatened to choke her.

Mr. Montesi averred that Mrs. Montesi was extravagant; that he spent $5,000 on their honeymoon in Florida and the West Indies which included a $2,000 diamond ring and her wardrobe; that immediately upon

the return from the honeymoon she insisted that he buy her a $9,000 Cadillac; that the defendant insisted on the plaintiff renting for her a very expensive apartment; that she spent $5,000 on furnishings; that she demanded that he deposit $20,000 in her name in the bank for her to spend as she pleased; that she was insisting that he build a $100,000 home on a $36,000 lot complete with riding stable, horses, etc.; that the plaintiff was supposed to observe a very rigid diet and the defendant refused to cooperate with him and to provide him regular meals; that the defendant had spent a considerable time during their married life with a former husband openly and notoriously, and that the defendant had called plaintiff's second wife and asked for information as to how she might divorce the plaintiff and that she had physically assaulted him when he refused some of her demands for money.

His Honor the Trial Judge submitted to the jury some twenty issues of fact in four different questionnaires.

The jury found that Mr. Montesi did not make an attempt or threaten the life of Mrs. Montesi; that Mr. Montesi did drink alcoholic beverages to an excess and embarrassed his wife while he was intoxicated; that he did make a gift of the 1972 Cadillac and certain furs to his wife; that he was guilty of such cruel and inhuman treatment or conduct toward Mrs. Montesi as renders cohabitation unsafe and improper. The jury found that Mrs. Montesi did live with her ex-husband, spending nights in his residence during the period of the marriage and that Mrs. Montesi was guilty of cruel and inhuman treatment of the plaintiff, Louis Montesi, while they were living as husband and wife.

We copy the following pertinent portions of the final decree:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, that plaintiff, Louis Francis Montesi is guilty of such cruel and inhuman treatment or conduct toward his wife as renders cohabitation unsafe and improper to be under the dominion and control of her husband. But, that Louis Montesi did not abandon defendant and cross-plaintiff Shirley Montesi, or turn her out of doors, and refuse or neglect to provide for her; that plaintiff, Louis Francis Montesi did not offer such indignities to his wife's person as to render her condition intolerable, and thereby force her to withdraw.

The original bill is dismissed.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that defendant and cross-complainant is guilty of such cruel and inhuman treatment or conduct toward her husband as renders cohabitation unsafe and improper for him to longer cohabit with her, and that, therefore, she is not entitled to separate support and maintenance as prayed in her cross-complaint, but the jury having found on a fact that plaintiff, Louis Francis Montesi, did give his wife, Mrs. Shirley Riddle Montesi, the 1972 Cadillac automobile and two (2) mink stoles, the cross-bill or cross-complaint is sustained only so far as she is entitled to the 1972 Cadillac automobile and two mink stoles, but not otherwise or further.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that heretofore the defendant, Mrs. Shirley Riddle Montesi, was found guilty of contempt of Court and fined therefor, and the Court sustains and reaffirms the fine adjudged against her.

AND, IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that divorce and separate support and maintenance are remedies for the innocent against the guilty, and both parties hereto having been found guilty or at fault, neither party is entitled to any other or further relief than herein above adjudged.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that each of

the parties pay one-half of the cost of the cause.

Wallace J. Smith
JUDGE DESIGNATE

3/23/73"

The appellant insists that the jury was an advisory jury only and that this Court should review the action of the Trial Court de novo as was done in *McDade v. McDade*, 45 Tenn.App. 487, 325 S.W.2d 575. This was not an advisory jury because the jury was demanded by Mrs. Montesi as she had a legal right so to do. The material evidence rule does apply and we hold that there was material evidence to support the findings of fact by the jury. Gibson's Suits in Chancery, 5th Edition, Section 591, "How Appellate Courts Review Jury Trials."

Solicitor for the appellant who did not try the case below very earnestly insists to this Court that we should apply the doctrine of comparative rectitude. This doctrine, generally stated, is that in divorce cases where both parties are guilty of misconduct for which a divorce may be granted, the Court will grant a divorce to the one who is less at fault. Appellant cites 24 Am.Jur.2d, Divorce and Separations, Section 228, page 380; and *Akins v. Akins*, 1969, 61 Tenn. App. 506, 456 S.W.2d 354.

Appellant insists that the jury found Mrs. Montesi guilty of adultery which is a much more serious offense than the plaintiff's cruel and inhuman treatment and that, therefore, the plaintiff should be granted a divorce because the marriage is obviously unsalvageable. Respectfully, we observe that the jury did not find Mrs. Montesi guilty of adultery and that plaintiff did not charge her with adultery. He merely charged her with cruel and inhuman treatment. The jury found only that Mrs. Montesi had spent some nights in the home of her ex-husband who also had custody of their minor child. There was no mention of adultery anywhere in the case except in appellant's brief.

This Court has decided that the case must be reversed and remanded for a new trial for the reason hereinafter set out and we deem it improper to make a ruling on the question of comparative rectitude.

Appellant's assignment of error No. I insists that His Honor the Trial Judge was in error in failing and refusing to grant a new trial because one of the jurors upon the trial below sat as a member of the jury which convicted the plaintiff of murder in the second degree of his first wife. The juror did not reveal this fact upon the voir dire examination. The juror, Mr. J. T. Legette, was asked, "Now, do any of you know either myself (Mr. Cole, solicitor for appellee) or Mr. Scruggs or any of the parties, do you recognize any of us, have you ever seen us before?" The juror, Mr. Legette, remained silent. Some of the jurors admitted knowing one or more of the lawyers engaged in the trial of the case. The juror, Legette, was asked specifically if he had heard anything in the news media that would cause him to be prejudiced toward Mr. Montesi to which he replied in the negative.

Mr. Legette was under an affirmative duty to the Court and to the parties to state in his voir dire examination that he did know Mr. Montesi and that he had sat on the jury which convicted him of second degree murder.

We copy Section 208 of 47 Am.Jur.2d, page 796, as follows:

"Sec. 208. Duty of juror to make true and full disclosures.

Full knowledge of all relevant and material matters that might bear on possible disqualification of a juror is essential to a fair and intelligent exercise of the right of counsel to challenge either for cause or peremptorily. Accordingly, it is the duty of a juror to make full and truthful answers to such questions as are asked, neither falsely stating any fact nor concealing any material matter. The voir dire

oath administered to jurors prior to their examination enjoins them to tell the complete and entire truth. Moreover, it has been held that where a prospective juror has been asked a question on voir dire which if answered in the affirmative would tend to disqualify him, the question is answered in the negative by the said prospective juror's silence. When a juror is asked on voir dire examination if he knows of any reason why he cannot sit as a juror, it is his duty to state any relationship that he may have to a party, and if he fails to do so, a litigant has a right to rely upon his answer that there is none."

 Mr. Legette's failure to reveal his participation in the criminal trial of Mr. Montesi misled Mr. Montesi's attorney to his prejudice. Mr. Montesi's attorney was entitled to challenge Mr. Legette for cause "propter affectum" and if the challenge "propter affectum" had been denied, then he would have been entitled to challenge peremptorily. He did not use any of his challenges on the trial below.

On the authority of *Toombs v. State*, 197 Tenn. 229, 270 S.W.2d 649, we hold that the defendant was denied his constitutional right to a fair and impartial jury. Assignment of error No. I is sustained. The decree will be reversed and the cause remanded for a new trial.

Appellee's assignment of error that the Trial Judge erred in failing to set aside a judgment of contempt against her is overruled.

The costs in this Court will be taxed to the appellee. The costs in the lower Court will abide the decree of the lower Court upon remand.

MATHERNE and NEARN, JJ., concur.